## **CONTINUATION OF APPLICATION FOR SEARCH WARRANT**

Based on my knowledge, training, experience, and the investigation of law enforcement officers with personal knowledge and with whom I am working, I, Geoffrey Yandl, being duly sworn, depose and state as follows:

1. I, Geoffrey Yandl, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), am currently assigned to the Grand Rapids, Michigan, Field Office.  I have been employed as a Special Agent with ATF since 2007, prior to which I was a Special Agent with the U.S. Secret Service for four years.  I have been involved in numerous investigations of violations of the Federal Firearms laws.

2. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued.  As a Special Agent with ATF, my duties include the investigation of alleged violations of federal criminal laws, including the subject offense of 18 U.S.C. § 922(g)(1) (felon in possession of firearms and ammunition).  I have received training in the investigation of firearms. I have learned the methods by which firearms are illegally trafficked and possessed through professional experience as well as my association with other members of law enforcement.

3. I am currently investigating Lucan Woodruff, born in 1979, for violations of 18 U.S.C. § 922(g)(1) (felon in possession of firearms and ammunition).  Based on the information set forth below, there is probable cause to believe that evidence of violations of 18 U.S.C. § 922(g)(1) (the **Subject Offense**) will be found on the following cellular phones: one black LG Smartphone and one Samsung Galaxy S10 Smartphone seized from the vehicle Lucan Woodruff was driving on February 25, 2021 (the **Subject Devices**).

4. This Application requests the issuance of a warrant to examine the **Subject Devices** outlined in Attachment A for evidence of the **Subject Offense**.  The categories of electronically stored information and evidence sought are described in Attachment B.

5. The information contained in this continuation is based upon information obtained personally by me and information provided to me by other law enforcement officers and agents who have participated in this investigation.  This continuation does not contain all the information known as a result of this investigation, but only those facts that I believe are necessary to establish probable cause for the search warrant sought.

## **PROBABLE CAUSE**

6. On February 15, 2021, Fruitport Police Department officers responded to a report of a vehicle that hit a snowbank in a Meijer parking lot at 5300 Harvey Street in Fruitport Township, Michigan. Both the driver and Woodruff (the only passenger) were passed out in the vehicle.  Woodruff had a bag on his lap.  Officers recovered a FOZ, Model CZ5 pistol from the bag.  Woodruff told officers the bag was his and consented to its search.  However, after law enforcement discovered the pistol, Woodruff denied possession of the firearm.  The pistol was registered in the State of Michigan to Woodruff's mother-in-law, Janet Hosko.  Woodruff was subsequently arrested by Fruitport Township Police for firearms violations and has since been released on bond.

7. I am an interstate nexus expert with the ATF and performed an interstate nexus evaluation on the FOZ, Model CZ5 pistol with serial number V10289 that was recovered by law enforcement. The pistol was manufactured in the Country of Czechoslovakia and imported to the State of Vermont. The firearm therefore crossed state lines prior to February 15, 2021.

8. I checked Woodruff's criminal history and found the following felony convictions: escape – awaiting trial for felony (1997); assault with intent to rob while armed (2001); and prisons – prisoner possessing contraband (2005). Woodruff was discharged from parole by the Michigan Department of Corrections in March 2018.

9. On January 26, 2021, I received pursuant to a search warrant records for Woodruff's Facebook account. I reviewed the Facebook records and found dozens of photos and videos of Woodruff in possession of, displaying, and shooting firearms and ammunition. A sample of the photographs is below.



MARCH 22, 2020



JULY 8, 2020



JULY 8, 2020


AUGUST 11, 2020


AUGUST 11, 2020

10. I also found conversations and messages in Facebook Messenger regarding firearms and ammunition. A sample of these conversations are below.

   a. <u>November 26, 2019:</u>
      Lucan Woodruff:  Because look at what i just got

 

> Went down and cleaned out one of my Dads storage lockers
> That's my dresser
> And the other one is a G 36 full auto,556. With 2 40 rd. Standard mags and a BULL'S NUT 100 rd. Drum. That holds 50 on each side. Thats a 20,000 $ gun

b. <u>June 28, 2020:</u>
   Josh Curtis:
   > Can u get guns
   > Like could u get me a strap if I road up to Detroit to pick it up
   > Just a burner pistol for home protection
   > Prob won't ever leave the house/back ally

   Lucan Woodruff:
   > Any one i get i keep
   > Sorry
   > I know how it is

c. <u>June 28, 2020:</u>
   Josh Curtis:
   > We got an ak here now
   > But it's semi
   > Kinda wack
   > I mean it look cool
   > It uncomfortable to shoot the stock is cheap it's a pos off brand one. But still look intimidating as fuck. But everytime we took it out it has jammed after like the 5th round
   > And we don't know how to fix it
   > And it's stolen
   > So we can't take to shop

   Lucan Woodruff:
   > I can fix it

11. On February 24, 2021, I applied for and obtained a federal search warrant for Woodruff's residence at 3691 East Pontaluna Road in Fruitport, Michigan. That search warrant permitted the seizure of any cellular or mobile telephones associated with Woodruff.

12. On February 25, 2021, I along with other law enforcement executed the federal search warrant at Woodruff's residence. Woodruff was not present at initiation of the warrant. Upon searching the residence, agents located a number of rounds of ammunition shell cases.

13. During the search, officers observed Woodruff approaching the residence in a Chevrolet Malibu. Woodruff was the only occupant of the vehicle and the vehicle was registered in the State of Michigan to Woodruff's wife. Woodruff slowed and turned around in a parking lot west of the residence. Officers made contact with Woodruff and escorted him to the residence for an interview.

14. Woodruff was placed in the back of a marked police vehicle. I identified myself to him and explained the nature of the investigation. I showed him a copy of the search warrant for his residence and offered to speak with him at the police department. He preferred to remain in the police vehicle and consented to the search of his vehicle. During the search, agents located two cell phones (**Subject Devices**) in the passenger area.

15. During a *post-Miranda* conversation I had with Woodruff, ATF Special Agent Jeremy Marshall came to the patrol vehicle and notified me of the two cell phones that were located in Woodruff's vehicle. Woodruff stated, "Why does he have my phones?"

    a. I showed Woodruff photographs I retrieved from Facebook showing him shooting or holding various firearms. Woodruff claimed the firearms he was shooting in the photographs belonged to someone "up north." Woodruff then became concerned about the **Subject Devices** and claimed they were not his.

    b. I also showed Woodruff additional photographs of him shooting firearms. He said he was shooting at "Hilton Park." When I asked him who the guns belonged to, Woodruff stated, "If you get my phone, I'll give you his name." When I asked him again who the guns belonged to, Woodruff again stated he could get the name from his phones. He then said the subject's name is "Ron" but that he was not comfortable giving "Ron's" last name.

    c. I showed Woodruff a picture of him in a tactical vest with a firearm in a holster. Woodruff claimed the firearm was an airsoft pistol he sold to "Randy." I showed Woodruff another photo of firearms from his Facebook page. Woodruff said, "Grab my phone, look under Facebook and go to the last one." He then said, "Grab my phone, I'll show you." I responded, "I don't know where you phone is." Woodruff said, "It's right there, he got both of them."

16. Based on my training and experience, participation in numerous firearm investigations and financial investigations relating to illegal firearms, and based upon discussions with other law enforcement officers, I know:

    a. Illegal firearms users and traffickers use mobile telephones to facilitate the purchase and sale of illegal firearms. Mobile phones are portable, and some mobile telecommunications service providers do not require purchasers of the devices to provide their names and/or addresses, so firearms traffickers use the devices in an effort to avoid detection by law enforcement. People often carry their cellular phones with them at all times. Mobile phones often contain evidence indicative of illegal firearms possession and trafficking, including records of incoming and outgoing calls and text messages with suppliers and purchasers of firearms; voicemail messages; photographs of firearms, coconspirators, or currency; customer and supplier contact information; and, in the case of "smart phones," Global Positioning System (GPS) data indicating the location of the device at given points in time, providing evidence that the device was in high crime areas or evidencing the route used in trafficking illegal firearms. Additionally, illegal firearms traffickers typically maintain and use multiple mobile phones, often in the names of nominees, to facilitate sales, and frequently switch phones to evade detection by law enforcement. Further, these types of devices are used to access social media websites such as Facebook, Instagram, etc. In my training and experience, I know that illegal firearms possessors and traffickers use social media assessed via cell phones with increasing frequency to communicate with suppliers and purchasers.

    b. It is common for illegal firearms possessors to take and maintain photographs of themselves and their colleagues with firearms and cash displayed as the tools and proceeds of their illegal activity, and to keep either physical or electronic copies of those images. The images are often stored on smart phones, computers, and other digital devices, as well as on social media websites such as Facebook, Instagram, etc., and accessed via computers and cell phones. Digital evidence can be found for a long period of time on computers, cell phones, and other devices because a forensic examiner can access even temporary and deleted files, as well as internet history, long after they are accessed or created by the user.

    c. Cellular phones also generate internet use history that can reveal the websites or internet queries entered by the person using the device, including searching for the addresses of various businesses or other locations.

    d. Further, cellular phones and similar devices are frequently used to access social media websites such as Facebook, Instagram, etc. In my training and experience, firearms traffickers are using social media with increasing frequency to communicate with suppliers and purchasers of firearms.

17. Based on the above information, as well as the evidence we have that Woodruff photographs himself with firearms, posts firearms photographs on social media, and communicates with others on social media about the acquisition and repair of firearms, there is probable cause to believe that evidence of possessing firearms and ammunition would be found on the **Subject Devices.**

18. The **Subject Devices** are currently in storage at the Grand Rapids ATF Resident Office. The **Subject Devices** are stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as it was when the **Subject Devices** were first seized.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. The warrant applied for would authorize the extraction and copying of electronically stored information, all under Rule 41(e)(2)(B).

20. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

21. *Forensic evidence.* This application seeks permission to locate forensic electronic evidence that establishes how the **Subject Devices** were used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Devices** because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file.

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Devices** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

23. Based on the above facts, I submit there is probable cause to believe that the **Subject Devices** described in Attachment A contain evidence and fruits of crimes, as further described in Attachment B, specifically relating to violations of 18 U.S.C. § 922(g)(1) (possession of firearms and ammunition by a felon) in the Western Judicial District of Michigan.